## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1895.

*Continued from Volume 64.*

JOHN M. GRIMES *et al.*, Executors of JAMES B. GRIMES, Deceased, Respondents, v. SEREPTA A. WHITESIDES, Appellant.

### St. Louis Court of Appeals, January 21, 1896.

1. **Alteration of Written Documents**: PRESUMPTIONS. The presumption, that an alteration of a written document was made prior to, or at least contemporaneous with, its execution, is not overcome as a matter of law by suspicious circumstances apparent upon the face of the document; but, when an alteration or interlineation is of a suspicious character, that circumstance alone, without any additional proof, will warrant a finding against that presumption by the trier of the facts.

2. ———: EFFECT OF RECORDING PAPER AS ALTERED. A deed conveying land to a married woman was altered by a stranger so as to make the conveyance purport to be to her separate use, and it was then filed for record with the recorder of deeds and recorded by him as thus altered. *Held*, that the recording of the deed in this form would not avail a subsequent creditor of the married woman in an action in equity by him to charge the land as her separate estate.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED.

*W. H. Morrow* and *J. D. Hostetter* for appellant.

*E. B. Hicks* for respondents.

BIGGS, J.—The defendant is a married woman, and has been since 1857. On the eighteenth day of March, 1888, she executed and delivered to James B. Grimes, deceased, a promissory note for $299.63. On the thirty-first day of August, 1891, the sum of $200 was paid on the note. The present action is one in equity, in which the plaintiffs, as executors of Grimes, seek to have the balance due on the note declared a charge on lots five (5) and six (6) in block two (2), in Marshall S. Allen's first addition to the city of Louisiana. The alleged ground of the equity is that at the time of the execution of the note the defendant owned as her separate property certain real estate in Lincoln county, Missouri; that afterward this land was exchanged for other land, which was likewise conveyed to her as her separate estate, and which, in turn, was exchanged for the lots in Louisiana. The defendant admitted the execution of the note and the partial payment, but denied all other allegations. The decree was for the plaintiffs, and the defendant has appealed.

Several questions are discussed in the briefs, but we will examine only two.

The defendant's deed to the land first mentioned, which was owned by her at the time she executed the note, contained the following clause which was interlined, to wit: "*To her sole and separate use.*" It is conceded that the interlineation was made in pencil.

If it was made before, or contemporaneously with, the execution or 'acknowledgment of the deed, then a separate estate was conveyed; but, if made afterward, then only an ordinary or legal estate was vested in the defendant. In the one case, the plaintiffs might prevail in their action; in the other, they must fail.

Before referring to the evidence bearing on the issue we had better determine upon what party the burden of proof rested, and what presumptions, if any, attend the inquiry. On the question of presumptions the authorities are conflicting. Some hold that an alteration or interlineation will be presumed to have been made after the execution and delivery of an instrument, while others hold that the presumption is to the contrary, upon the principle that the law never presumes wrong. The rule adopted in this state is that "the law will presume that the alteration was made before, or at least contemporaneous with, the signing of the writing, unless peculiar circumstances of suspicion are patent on its face; and even then the whole question is one for the jury to settle upon all the facts, when and where and with what intent the alteration was made." *McCormick v. Fitzmorris*, 39 Mo. 24, *loc. cit.* 34; *Burnett v. McCluey*, 78 Mo. 676. The supreme court could not have intended to decide that, where the alteration or interlineation was of a suspicious character, the presumption stated was entirely removed or that one to the contrary obtained. We take it that the court meant this: That, if the alteration or interlineation is of a suspicious character, the chancellor or jury would be authorized to decide against the presumption on the face of the paper without additional proof. Hence, in the present case the facts, that the interlineation was made in pencil, and was in a different handwriting from that of the body of the deed, did not do away with the presump-

tion in favor of plaintiffs, but the suspicious character of the change was a strong circumstance against them and is entitled to great weight in reviewing the case.

The deed mentioned was recorded as interlined, and the plaintiffs read in evidence a certified copy from the record showing that fact. They also read in evidence the original deed which showed the interlineation, and that it was made with a pencil. Deeds to the other lands were also read in evidence, but they were subsequent to the execution of the note. The plaintiffs, however, introduced no evidence explaining the interlineation. On the other side, the defendant and the grantor in the deed both testified that they knew nothing about the interlineation, but they were reasonably certain that it was made after the acknowledgment and delivery of the deed. The defendant further testified that she gave the deed to her husband for the purpose of having it recorded, and that she did not see it again until a short time before this suit was brought, when for the first time her attention was called to the alteration. It thus appears that the great preponderance of the evidence was to the effect that the interlineation was made after the execution of the deed; that it was made by a stranger without the consent of the parties thereto, and was, therefore, an act of spoliation and not an alteration. We must, therefore, dissent from the conclusion reached by the circuit court on this branch of the case.

But plaintiffs insist that James B. Grimes was an innocent incumbrancer, and that, in making the loan, he had a right to rely on the record for information as to the defendant's title. The purpose of the registry laws has been declared to be to protect *bona fide* purchasers and mortgagees (*Foster v. Breshears*, 55 Mo. 22; *McCamant v. Patterson*, 39 Mo. 100), and the

weakness or vice in the plaintiffs' position is that Grimes was not a purchaser or mortgagee, nor even an incumbrancer in any sense of that word. The note is not a legal obligation, and, of itself, created no lien on anything. It is only in a court of equity that it can receive any recognition whatever, and then only as the foundation of a proceeding to charge its payment upon the separate property of the defendant owned by her at the time of its execution, or upon property subsequently acquired with the proceeds of such property. *Davis v. Smith*, 75 Mo. 219; *Chicago Coffin Company v. Fritz*, 41 Mo. App. 389; *Baer v. Pfaff*, 44 Mo. App. 35; *Osborne v. Graham*, 46 Mo. App. 28.

It is also insisted that the evidence tends to show that the interlineation was made by the defendant's husband, and that, as he was intrusted with the deed by her, she ought not to be allowed to profit by his unauthorized act to the prejudice of the estate of Grimes; in other words, that she ought to be estopped to assert her true title. The plaintiffs barely assert this proposition. No authorities are cited in support of it. To us it is inconceivable how such an estoppel can be reasoned out on legal lines. But, conceding that the suggestion is not without merit, yet it can not avail the plaintiffs, for the reason that there is no satisfactory evidence that the husband made the alteration.

It is clear that the judgment of the circuit court can not be upheld, and it must, therefore, be reversed and the cause remanded. All the judges concur.